[Civ. No. 14785. Fourth Dist., Div. One. Apr. 19, 1977.]

ANNE MARIA ROTEN-OESCHGER et al.,
Plaintiffs and Respondents, v.
HOUSTON I. FLOURNOY, as State Controller,
Defendant and Appellant.

■■■■■■■■

## COUNSEL

Evelle J. Younger, Attorney General, Warren J. Abbott, Assistant Attorney General, Carole Kornblum and Yeoryios C. Apallas, Deputy Attorneys General, for Defendant and Appellant.

Gostin & Katz, Irwin Gostin and Richard Barnett for Plaintiffs and Respondents.

## OPINION

COUGHLIN, J.*—Houston I. Flournoy, as Controller of the State of California, appeals from a judgment decreeing Friedrich R. Stutz recover from Flournoy the sum of $12,755, less a designated sum, by virtue of statutes governing the recovery of escheated property. Stutz is one of seven petitioners herein who are heirs at law of Gustav Muller, i.e. cousins. All of the petitioners are nonresident aliens. Muller died intestate on November 28, 1965, in San Francisco, California. On February 2, 1972, five of the petitioners filed one of the petitions herein to recover funds which had been a part of the Muller estate and which, by decree of the Superior Court of the City and County of San Francisco, dated January 11, 1971, had been distributed to the State of California. On February 14, 1974, a first amended petition was filed. On March 28, 1975, the other two petitioners filed their petition to obtain their claimed share of the funds. The two petitions were consolidated for decision. By some method, which does not appear from the record, Stutz became entitled to the claimed shares of all of the petitioners.[1]

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Acting Chairman of the Judicial Council.

[1]In its conclusions of law the trial court declared Stutz is the rightful owner of the funds which escheated to the state from the estate of Muller.

The rights of the petitioners to inherit the funds in question were conferred by Probate Code section 226, but were subject to the provisions of former Probate Code section 1026 that, "[a] nonresident alien who becomes entitled to property by succession must appear and demand the property within five years from the time of succession; otherwise, his rights are barred and the property shall be disposed of as escheated property."

■ Under a settled rule the interest of petitioners in Muller's estate vested in them upon his death, but it was a conditional interest, " 'upon the condition subsequent that if they fail to appear and claim the same within five years their right ceases and the property then vests in the state.' " (*Estate of Horman,* 5 Cal.3d 62, 78 [95 Cal.Rptr. 433, 485 P.2d 785]). As petitioners did not appear and demand their share in Muller's estate within five years after his death their interest in the estate terminated. Thus the decree of distribution in that estate was entered pursuant to Probate Code section 1027 which provided. "If the court . . . does not distribute the entire balance of the estate remaining for distribution to known heirs, devisees or legatees entitled to succeed thereto, it must distribute to the State of California that portion of such estate not distributed to such known heirs, devisees or legatees. . . ." The decree was entered January 11, 1971, which was more than five years after the death of Muller and, petitioners not having appeared and demanded their share of the estate, the court properly distributed the balance thereof to the State of California.

However, in support of their claims, petitioners rely upon further provisions of section 1027 that, "[i]f the court distributes the estate or any portion thereof to the State of California, and the distributing clause contains words otherwise creating a trust in favor of certain unknown or unidentified persons as a class, such a distribution shall vest in the State of California both legal and equitable title to the property so distributed; saving, however, the right of claimants to appear and claim the estate or any portion thereof, as in this section provided"; all property distributed to the State of California shall be delivered to the State Controller for deposit in the state treasury; and "[t]he property so distributed shall be held by the State Treasurer for a period of five years from the date of the decree making such distribution, within which time any person may claim the estate or any part thereof in the manner provided by Title 10 of Part 3 of the Code of Civil Procedure. . . ." The provisions of title 10 of part 3 of the Code of Civil Procedure (§ 1300 et seq.) govern the distribution of property distributed to the state and provide proceedings by which claimants thereto may recover such property.

Petitioners do not state under what section or sections of title 10 they are proceeding. However, no objection having been made to their petition upon this ground, we assume, absent the objections hereinafter stated, the trial court had jurisdiction to act in the matter (generally see Code Civ. Proc., §§ 1440, 1441, 1443 and 1353).

On the other hand Flournoy contends petitioners may not recover their claimed interest in the estate because they failed to appear and demand such within five years from the date of Muller's death, premising this contention upon the provisions of sections 1026 and 1027 of the Probate Code and section 1336 of the Code of Civil Procedure which were in effect up to January 1, 1975. During this time section 1026, as heretofore noted, provided the rights of nonresident aliens in an estate who had not appeared and demanded their interest therein within five years from the date of the decedent's death were barred; section 1027, which provided property distributed to the state by decree of distribution should be held by the state treasurer for a period of five years during which any person may claim such in the manner provided by title 10 of part 3 of the Code of Civil Procedure, also provided, by language immediately following the foregoing provision, that: "Rights of nonresident aliens shall be governed by the provisions of Section 1026 of this Code"; and section 1336 provided: "[t]he right of nonresident aliens to claim unclaimed money or other property under the provisions of this title [i.e., title 10 of part 3 of the Code of Civil Procedure] is subject to the provisions of Section 1026 of the Probate Code."

By virtue of section 1026 and the judicial decisions interpreting it, at the time the property in Muller's estate was distributed petitioners had no interest therein because they had not appeared and demanded such within five years from Muller's death. Thus, the distribution thereof to the state was absolute. ■ The provisions of section 1027 respecting the rights of persons to claim property distributed to the state did not apply to the petitioners because (1) they had no claim thereto and, in addition, (2) the section expressly provided their rights should be governed by section 1026 which, in effect, excluded from the rights conferred by section 1027 the rights of nonresident aliens who had failed to appear and demand their interest in the property of the estate within five years from the date of the decedent's death. Furthermore, title 10 of part 3 of the Code of Civil Procedure did not provide petitioners with a procedure to claim money distributed to the state because the procedures provided thereby, in the light of section 1336, did not extend to claims by nonresident aliens who had not asserted such within five years of the date of the decedent's death.

■ On the other hand, petitioners direct attention to the fact Probate Code section 1026 was repealed as of January 1, 1975, Probate Code section 1027 was amended, as of that date, by excluding therefrom the provisions thereof that the rights of the nonresident aliens shall be governed by the provisions of section 1026, and at the same time Code of Civil Procedure section 1336 was repealed; contend Probate Code section 1027 as amended applies retroactively; and also contend, under these circumstances they are entitled to claim their interest in the money distributed to the state at any time within five years after distribution.

In response Flournoy relies on the well-settled rule the effect of statutes is not retroactive unless expressly so declared or the intent they should be retroactive is necessarily implied from the language used therein (*DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865]; *Montecito Co. Water Dist.* v. *Doulton,* 193 Cal. 398, 403 [224 P. 747]).

Petitioners counter with the contention the rule against retroactivity is subject to the overriding general interpretive rule "that a statute must be interpreted so as to effectuate legislative intent", citing *Mannheim* v. *Superior Court,* 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17]; historically the policy of the state toward the property rights of aliens has changed, over a period of years, from a policy limiting those rights to a policy equating them with the rights of nonaliens; the statute repealing sections 1026 of the Probate Code and 1336 of the Code of Civil Procedure, and amending section 1027 of the Probate Code, reflects this pre-existing change of policy; to conform the law to this pre-existing policy it must be assumed the Legislature intended the statute should be applied retroactively; and for these reasons, it should be interpreted to permit petitioners to proceed under Probate Code section 1027 which, where applicable, permits recovery upon petition within five years following distribution to the state.

In *Mannheim,* where the Legislature had expressly directed the provisions of a particular Probate Code section should be applied retroactively and incorporated these provisions in another Probate Code section, the court, to effectuate legislative intent, held the provisions in the latter code section also should be applied retroactively. None of the code provisions under consideration in the case at bench were made retroactive. Moreover, the state policy upon which petitioners predicate their argument, as it affected the interests of nonresident aliens in an estate and their right to assert their claim thereto, did not become the

policy of the state and was not adopted until the repeal of sections 1026 of the Probate Code and 1336 of the Code of Civil Procedure, and the amendment of section 1207 of the Probate Code.

As heretofore noted, by virtue of Probate Code section 1026 the right of petitioners to property in the estate of Muller was a limited right which terminated upon their failure to appear and demand their share of the estate within five years following Muller's death. There is no rational basis for holding the Legislature, by repealing section 1026, intended to revive rights thoretofore terminated. Neither the rules nor the rationale provided in *Mannheim,* and other cases cited by petitioners, apply to the facts in the case at bench. The rules and rationale stated and applied in *Estate of Horman, supra,* 5 Cal.3d 62, 78; *Douglas Aircraft Co.* v. *Cranston,* 58 Cal.2d 462, 465-467 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298]; *DiGenova* v. *State Board of Education, supra,* 57 Cal.2d 167, 172-174 and *Estate of Thramm,* 80 Cal.App.2d 756, 764-765 [183 P.2d 97], apply to this case and dictate the conclusion the present provisions in Probate Code section 1027 upon which petitioners rely are not retroactive.

The judgment is reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 4, 1977, and respondents' petition for a hearing by the Supreme Court was denied June 16, 1977.